**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

AUG 2 6 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**BABY JOGGER, LLC.**

**Plaintiff,**

**v.**                                                          **CIVIL ACTION NO. 2:12cv452**

**BRITAX CHILD SAFETY, INC.,**

**Defendants.**

### *MEMORANDUM OPINION & ORDER*

Presently before the Court is claim construction of several terms found in U.S. Patent No. 6,102,431 ("the '431 Patent"), which Britax Child Safety, Inc. holds. The Court conducted a hearing on June 20, 2013, to construe the following terms of the '431 patent: **(1) two meshing Geared components;** (2) **secured to;** (3) **fixed component;** and (4) **means of retracting said piston against said spring.** This matter is now ripe for judicial decision.

### I. BACKGROUND & PROCEDURAL HISTORY

This matter stems from Plaintiff Baby Jogger, LLC. ("Plaintiff" or "Baby Jogger") claims against Defendant Britax Child Safety, Inc. ("Defendant" or "Britax"), alleging patent infringement and trade dress infringement over baby strollers. Specifically, the Plaintiff accuses Defendant's B-Agile and BOB Motion strollers of infringing U.S. Patent No. 6,905,548 ("the '548 Patent"). Furthermore, Plaintiff asserts that Defendant's B-Agile stroller infringes Baby Jogger's alleged trade dress in its City Mini strollers. In response, Defendant has filed counterclaims against Baby Jogger, alleging that Baby Jogger strollers infringe a patent owned by Britax, U.S.

Patent No. 6,102,431 ("the '431 Patent"). The parties agree that none of the terms of the '548 Patent require construction by the Court. However, the parties have requested construction of four terms in the claims of the '431 Patent.

## A: The '431 Patent

Britax owns the '431 Patent and it was issued by the United States Patent & Trademark Office ("PTO") on August 15, 2000. It is entitled "Collapsible Baby Stroller and Releasable Locking and Folding Mechanism Therefor," and describes the invention of a baby stroller that can be folded with one hand for storage and transport. Claims 2, 3, 4, 6, and 8 in the '431 Patent are at issue and Claim 2 of the '431 Patent is an independent claim and the only such claim asserted against the Plaintiff. All of the relevant claims for which the parties seek construction of are contained in Claim 2 of the '431 Patent:

> A releasable locking and folding mechanism for hinging three cantilevered, rigid members, constraining them to move together in a controlled manner, said mechanism comprising: two meshing geared components, which rotate relative to a fixed component, a follower secured to each said meshing geared components, a spring-loaded piston secured to the fixed component, and a means of retracting said piston against said spring secured to said fixed component, wherein said mechanism can be secured into a locked and open position.

## II. LEGAL STANDARD

Claim construction is "a question of law, to be determined by the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). In construing claims, the Court must look first to the intrinsic evidence in the record (i.e., the claims, the specification, and the prosecution history). *Markman v. Westview Instruments, Inc.*, 52 F.3d 867, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). Claim construction begins with determining how a person of ordinary skill in the art understands a claim term as of the filing date of the parent application. *Phillips v. AWH Corp.*

*et al.*, 415 F.3d 1301, 1313 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006).  In the unlikely event that the intrinsic evidence is insufficient to determine the acquired meaning of the claim language, the court may rely on extrinsic evidence (i.e., dictionaries, treatises, publications, and expert testimony).  *See id.*; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996).

## A. The Claim Language

A court's claim construction analysis must begin with the words of the claim.  "[T]he words of a claim 'are generally given their ordinary and customary meaning' . . . the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics*, 90 F.3d at 1582).  This ordinary meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1313.  Thus, the Court need not provide a new definition or rewrite a term when the Court finds the term's plain and ordinary meaning is sufficient.  *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

If the meaning of a term is not immediately apparent, courts must look to the written description and prosecution history to provide guidance as to the meaning of the claim terms.  *Phillips*, 415 F.3d at 1314.  In analyzing the claim language, the Court must analyze the context in which the term appears and other claims of the patent to gain insight on the patentee's intention for claim definition.  "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."  *Id.*

## B. Specification

The specification contains a written description of the invention, and the manner and process of making and using it, and the best mode contemplated by the inventor of carrying it out. *See* 35 U.S.C. § 112. "It is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582; *see also Phillips*, 415 F.3d at 1315. However, there is a distinction between using the specification to analyze the claim and incorporating limitations from the specification into the claim language. *Phillips*, 415 F.3d at 1323; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004).

## C. Prosecution History

The prosecution history contains the complete record of all proceedings before the Patent and Trademark Office ("PTO"), including any express representations made by the applicant regarding the scope of the claims. The prosecution history is useful in determining how the inventor understood the patent and invention, and may provide evidence that the inventor limited the invention during the course of prosecution, thus restricting the scope of the claim language. *Phillips*, 415 F.3d at 1317. However, the Court should not rely too heavily on the prosecution history because it "represents an ongoing negotiation between the PTO and the application, rather than the final product of that negotiation, [such that] it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

## D. Extrinsic Evidence

A court may also consider extrinsic evidence, "which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and

4

learned treatises." *Phillips*, 415 F.3d at 1317-19. However, extrinsic evidence should not be used "to contradict claim meaning that is unambiguous in the light of intrinsic evidence." *Id.* at 1324. Judges may consult search resources to better understand the underlying technology and to aid in construing claim terms, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1322-23. Extrinsic evidence has been found to be generally less reliable than intrinsic evidence and accordingly should be considered in light of the intrinsic evidence. If analysis of the intrinsic evidence will resolve any ambiguity, it is improper to consider extrinsic evidence in determining the meaning of the claims. *Id.* at 1320.

## III. DISCUSSION

### A. Stipulated Term Definitions

Prior to the *Markman* hearing, the parties filed a Joint Claim Construction and Prehearing Statement indicating that they agreed to the definition of one (1) claim term. Accordingly, the Court adopts the following term definition:

> The term "follower" appears in Claim 2 of the '431 Patent. The parties agree that the term "follower" means "a component which follows the motion of a separate component"

### B. Disputed Terms in I/P Engine's Patents

#### 1. *"Two meshing geared components"*

The term "two meshing geared components" appears in Claim 2 of the '431 Patent. Baby Jogger asserts that the proper construction of this term is "two geared components wherein the gear teeth of the first geared component directly engage the gear teeth of the second geared component to transmit motion between the components." Joint Claim Constr. & Pre-Hr'g Statement

(hereinafter "Pre-Hr'g Statement") Ex. A, at 2. Britax argues, however, the Court need not engage in any additional construction of the term and that the plain and ordinary meaning of the term will suffice under the circumstances. *Id.* The Court finds that there is no need for construction of the term because the term is clear based on its plain and ordinary meaning. However, simply because the Court finds that the term is clear based on its plain and ordinary meaning does not mean that the parties will be permitted to argue conflicting claim constructions through expert testimony to the jury or the Court at trial. The United States Court of Appeals for the Federal Circuit ("Federal Circuit") is quite clear any attempt by the parties to introduce expert testimony to litigate or relitigate the district court's claim construction, it is "improper" and that "[t]he risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that the district court's claim constructions control." *Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). At trial, the Court will not allow any expert testimony that attempts to reconstrue or otherwise suggest to the jury constructions of this term that the Court now rejects.

### 2. *"Secured to"*

The term "secured to" appears in Claim 2 of the '431 Patent. Baby Jogger asserts that the proper construction of the term is "directly attached to" while Britax argues, however, that the Court need not engage in any additional construction of the term and that the plain and ordinary meaning of the term will suffice under the circumstances. Pre-Hr'g Statement, at *2. The Court declines construction of the term because the term is clear based on its plain and ordinary meaning. The Court's warning against attempting to relitigate or construe the term through expert testimony at trial is equally applicable to this term.

### 3. *"Fixed Component"*

The term "fixed component" appears in Claim 2 of the '431 Patent. Baby Jogger asserts that the proper construction of the term is "folding mechanism case" while Britax argues, however, that the Court need not engage in any additional construction of the term. Pre-Hr'g Statement, at *2. The Court concludes that the parties may rely on the plain and ordinary meaning of the term. The Court's warning against attempting to relitigate the meaning of the term through expert testimony at trial is equally applicable to this term.

### 4. *"Means of retracting said piston against said spring"*

Both parties agree that the term "means of retracting said piston against said spring" is a means-plus-function limitation, as defined by 35 U.S.C. § 112, Paragraph 6 or (f):

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

There is a rebuttable presumption that 35 U.S.C. § 112, Paragraph 6 applies "[i]f the word 'means' appears in a claim element in association with a function." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005). Given this presumption and the lack of any dispute regarding the applicability of 35 U.S.C. § 112, Paragraph 6, the Court will treat the term "means of retracting said piston against said spring" as a means-plus-function limitation. Next, the Court must identify the function associated with the means-plus-function claim language. *See JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). Finally, the Court must identify the corresponding structure in the written description that performs that function. *Id.* To be clear, "[d]etermining a claimed function and identifying structure corresponding to that function involve distinct, albeit related, steps that must occur in a particular order. In short, function must be

determined before corresponding structure can be identified." *Id.* Furthermore, the Federal Circuit

has indicated that

> Section 112, paragraph 6 states that a means-plus-function claim "shall be
> construed to cover the *corresponding* structure . . . described in the specification."
> (emphasis added). We hold that, pursuant to this provision, structure disclosed in
> the specification is "corresponding" structure only if the specification or
> prosecution history clearly links or associates that structure to the function recited
> in the claim. This duty to link or associate structure to function is the quid pro quo
> for the convenience of employing § 112, P 6.

*B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) (citation omitted).

The parties agree that the function of the means-plus-function limitation at issue is

"retracting the piston against said spring" and the Court finds that this is the proper function of the

means-plus-limitation in question. Second, the Court must identify the corresponding structures to

this function. Baby Jogger's most current construction (as outlined in their reply brief) identifies a

two-part structure associated with the identified function of "retracting said piston against said

spring." Part one of the structure is associated with folding the stroller while part two of the

structure is associated with unfolding the stroller. According to Baby Jogger, for folding the

stroller, structure associated with the function of retracting is "a release strap connected to a

release lever that rocks about a fulcrum pin, which is held in place by a fulcrum plate fastened to

the inner half of the case so that when force is applied to the long arm of the release lever, a force

which tends to retract the spring-loaded piston is generated[.]" In the context of unfolding the

stroller, Baby Jogger asserts that part two of the corresponding structure associated with the

function is "the knife blade followers, which push down the piston against the spring until the

followers reach the fully open position and the piston is forced between the followers by the

spring." Britax most current construction (as outlined in their responsive brief) identifies the

8

corresponding structure associated with the function of this means-plus-function limitation as

"[t]he corresponding structures disclosed in the specification are a release lever 18 and a release

strap 34."

Although with slightly different formulations and after two rounds of briefing on the

matter, the parties agree that the corresponding structure with respect to folding or collapsing the

stroller include release lever 18, release strap 34, the fulcrum pin and the fulcrum plate.  These

components and their structural arrangement are detailed in the specification:

> It is also desired to be able to easily collapse the stroller for storage or transport.
> The stroller is unable to collapse until the spring-loaded piston 17 is retracted so
> that the gears 13-14 are free to rotate relative to the case 11-12. In order to retract
> the spring-loaded piston 17, *a release lever 18 rocks about fulcrum pin 20, which
> is held in place by fulcrum plate 19. The fulcrum plate 19 is fastened to the inner
> half 12 of the case so that when a force is applied to the long arm of the release
> lever 18, a force which tends to retract the spring-loaded piston 17 is generated.*

'431, Col. 5, ll. 34-42 (emphasis added).  While Baby Jogger argues that a second part of the

corresponding structure deals with unfolding and must be included in the construction of the

means-plus-function limitation at issue, Britax fails to identify the structure that would allow for

the unfolding and locking of the stroller and omits consideration of a relevant portion of the

Specification in its consideration:

> When the stroller unfolds into a fully open position, a piston 17, is pushed down
> by the knife blade followers 15-16 against a loaded spring 22 until the followers
> 15-16 reach the fully open position and the piston 17 is forced between the
> followers 15-16 by the spring 22.

'431, Col. 5, ll. 16-20.  Given the claimed invention, the function of the means-plus-function

limitation, and the relevant portions of the Specification, the Court adopts a two-part construction

of the corresponding structure as follows:

> For folding the stroller, the means of retracting is a release strap connected to a
> release lever that rocks about a fulcrum pin, which is held in place by a fulcrum

plate fastened to the inner half of the case so that when force is applied to the long arm of the release lever, a force which tends to retract the spring-loaded piston is generated, and, for unfolding the stroller, the means of retracting is the knife blade followers, which push down the piston against the spring until the followers reach the fully open position and the piston is forced between the followers by the spring.

## IV. CONCLUSION

For the foregoing reasons, the Court **FINDS** construction of the following terms unnecessary because the term is clear based on its plain and ordinary meaning: (1) two meshing Geared components; (2) secured to; and (3) fixed component. Further, the term "follower" appears in Claim 2 of the '431 Patent. The parties agree that the term follower means "a component which follows the motion of a separate component." Finally, both parties agree that the term "means of retracting said piston against said spring" is a means-plus-function limitation and that the function of that limitation is "retracting the piston against said spring." The Court adopts the construction as indicated above.

The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

Raymond A. Jackson
**United States District Judge**

Norfolk, Virginia
August 23, 2013

10