**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



FILED

NOV 19 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**BABY JOGGER, LLC**

      **Plaintiff,**

    **v.**                                     **CIVIL ACTION NO. 2:12cv452**

**BRITAX CHILD SAFETY, INC.,**

      **Defendant.**

### *MEMORANDUM OPINION & ORDER*

Before this Court are cross-motions from Plaintiff and Defendant for summary judgment (ECF No. 86 and 93) pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Having carefully reviewed the parties' pleadings, this matter is now ripe for judicial decision.  For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's Motion for Partial Summary Judgment is **DENIED**.

### I. BACKGROUND & PROCEDURAL HISTORY

Plaintiff Baby Jogger, LLC ("Baby Jogger") alleges that Defendant Britax Child Safety, Inc. ("Britax") committed patent infringement and trade dress infringement of its baby strollers.  Specifically, Baby Jogger accuses Britax's B-Agile and BOB Motion strollers of infringing Baby Jogger's U.S. Patent No. 6,905,548 ("the '548 Patent").  Furthermore, Baby Jogger asserts that Britax's B-Agile stroller infringes Baby Jogger's trade dress in its City Mini strollers.   In response, Britax has filed counterclaims against Baby Jogger, alleging that Baby Jogger's strollers infringe its U.S. Patent No. 6,102,431 ("the '431 Patent") and that Baby Jogger and its

President Mark Zehfuss engaged in tortious interference with its prospective economic expectancy and unfair and deceptive trade practices.

Baby Jogger owns the '548 Patent, issued by the United States Patent & Trademark Office ("PTO") on August 1, 2000. The '548 Patent describes the invention of a compact all-terrain baby stroller that can be folded with one hand. Britax owns the '431 Patent, issued by the PTO on August 15, 2000, which discloses a baby stroller that can be folded with one hand for storage and transport. U.S. Patent No. 4,544,178 ("the '178 Patent" or "the Al-Shiekh stroller") was issued on October 1, 1985 and describes a collapsible stroller with a reversible handle.

The parties requested construction of four terms in the '431 Patent. On August 26, 2013, this Court found construction of the terms "two meshing geared components," "secured to" and "fixed component" was unnecessary because the terms are clear based on their plain and ordinary meaning. This Court adopted a construction of "means of retracting said piston against said spring" defining the term as a means-plus-function involving "knife blade followers" that retracts the piston against the spring.

The parties filed cross-motions for summary judgment on issues involving the validity of the '548 Patent, infringement of the '548, '431 and '178 Patents, the trade dress of the City Mini stroller, and the unfair trade practices and tortious interference claims. In its Motion for Summary Judgment, Baby Jogger asserts that the '548 Patent has been infringed, the '548 Patent is valid as a matter of law, it has not infringed the '431 Patent, and it has not unfairly competed or tortiously interfered with Britax. In its Motion for Partial Summary Judgment, Britax asserts that the '548 Patent is invalid and that the City Mini stroller's trade dress is not protected under the Lanham Act. On October 7, 2013, the Court conducted a hearing on these motions.

2

## II. LEGAL STANDARDS

### A.  Patent Infringement

Determining whether a patent has been infringed requires a two-step analysis: first, the court construes the claim to determine its meaning and scope, and second, the fact finder compares each limitation of the construed claim to the accused infringing product. *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1372 (Fed. Cir. 2006); *Fellowes, Inc. v. Michilin Prosperity Co., Ltd.*, 491 F. Supp. 2d 571, 584 (E.D. Va. 2007). If the comparison does not reveal any genuine issue of material fact regarding each element of the accused product's presence in an asserted claim literally or under the doctrine of equivalents, there is no infringement and summary judgment must be granted. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005).

Literal infringement requires that the accused claim contain every limitation in the asserted claim. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). Infringement under the doctrine of equivalents may be found if the accused product does not literally infringe the express terms of the previously patented asserted invention but there is "equivalence" between the elements of the accused claim and the asserted claim. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950)); *Abbott Labs., Inc. v. Novopharm Ltd.*, 323 F.3d 1324, 1329 (Fed. Cir. 2003). The Federal Circuit has identified the proper analysis of infringement under the doctrine of equivalents:

> A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method.

*AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). As a matter of law, the doctrine of equivalents must be applied on an element-by-element basis and does not apply where its application would vitiate a claim limitation. *Warner-Jenkinson*, 520 U.S. at 18; *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 874 F. Supp. 2d 526, 565 (E.D. Va. 2012).

### B.   Invalidity of a Patent based on Anticipation and Obviousness

In order to receive patent protection, a claimed invention must be of patentable subject matter, novel, nonobvious, and fully and particularly described. 35 U.S.C. §§ 101, 102, 103, 112. Patents are presumed valid in their entirety and each claim of a patent is presumed valid independently. 35 U.S.C. § 282. To successfully defend against an infringement claim on a motion for summary judgment, an accused infringer must provide clear and convincing evidence of invalidity "so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). *See also Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1480 (Fed. Cir.1998) (noting that it is the defendant's burden to prove by clear and convincing evidence that the plaintiff's claimed invention would have been obvious in light of the prior art to support a defense of invalidity); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 807 F. Supp. 2d 563, 566 (E.D. Va. 2011) ("An accused infringer challenging the validity of a patent claim must prove anticipation by clear and convincing evidence."). Although he would not have the burden of proof at trial, for a patentee to successfully move for summary judgment, he must show that the accused infringer "failed to produce clear and convincing evidence of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co.*, 251 F.3d at 962.

A patent may be invalidated for not being novel and thus anticipated where a reference invention, which "describe[s], either expressly or inherently, each and every claim limitation and enable[s] one of skill in the art to practice an embodiment of the claimed invention without

4

undue experimentation," was patented more than one year prior to the date of the allegedly invalid patent's application to the PTO. 35 U.S.C. § 102(e); *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1341 (Fed. Cir. 2011). Prior art inherently discloses a claimed invention if all elements of the claimed invention are present and arranged as in the prior art and there is "no change in manner of application and no result substantially distinct in its nature." *Ansonia Brass & Copper Co. v. Elec. Supply Co.*, 144 U.S. 11, 18 (1892); *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334-35 (Fed. Cir. 2008). *See also MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates."). Determining anticipation is a question of fact that "may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

A patent may be invalidated for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). *See also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007) (explaining a patent to be obvious if it is no more than a predictable use of prior art elements and there is an apparent reason to combine those elements as the patent does); *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1351-52 (Fed. Cir. 2010) (explaining a patent to be obvious where "two or more pieces of prior art could be combined, or a single piece of prior art could be modified, to produce the claimed invention."). "While the ultimate conclusion of obviousness is for the court to decide as a matter of law, several factual inquiries underlie this determination" and must be considered under the *Graham v. John Deere Co.*, 383 U.S. 1 (1966) ("*Graham*")

5

analytical framework. These factual inquiries include "the scope and content of the prior art, the level of ordinary skill in the field of the invention, the differences between the claimed invention and the prior art, and any objective evidence of non-obviousness such as long-felt need, and commercial success." *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000) (citing *Graham*, 383 U.S. at 17-18). If the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not materially disputed, a defendant may succeed in a motion for summary judgment if he sufficiently demonstrates that one of ordinary skill "would have both recognized the problem in the art as recognized by the inventors and found it obvious to solve such problem in the manner claimed in the invention." *Morpho Detection, Inc. v. Smiths Detection Inc.*, 2012 WL 5879851, *6 (E.D. Va.).

### C.     Trade Dress Infringement

Section 43(a) of the Lanham Act provides a cause of action to a plaintiff if a defendant uses "any word, term name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a)(1)(A). To establish trade dress infringement, the plaintiff "must prove (1) that its trade dress is either inherently distinctive or has acquired secondary meaning so that it is perceived as identifying and distinguishing the source of the goods; (2) that its trade dress is nonfunctional; and (3) that defendant's trade dress is likely to cause confusion among the relevant purchasing public." *X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 617 (E.D. Va. 2001). Summary judgment is appropriate if there are no genuine issues of material fact as to whether the allegedly protected product's features are inherently distinctive, acquired secondary meaning, are nonfunctional, or there is a likelihood of consumer confusion. *Ashley*

*Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 377 (4th Cir. 1999).

To analyze the acquisition of secondary meaning, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") outlined factors a court may consider in *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121 (4th Cir. 1990). The *Perini* factors include: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Perini Corp.*, 915 F.2d at 125. The Fourth Circuit has recognized a presumption of secondary meaning sufficient to shift the burden of persuasion to the defendant in cases of intentional, direct copying. *See Osem Food Indus. v. Sherwood Foods*, 917 F.2d 161, 165 (4th Cir. 1990) (applying the presumption where defendant admitted to copying the plaintiff's trade dress); *Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 481 (E.D. Va. 2002) (applying the presumption where accused mark was identical to the protected mark and both were used in the same market); *X-IT Products, L.L.C.*, 155 F. Supp. 2d at 624 (applying the presumption where parties agreed that certain elements of the plaintiff's trade dress were copied by the defendant).

To establish that a product's features are nonfunctional, the plaintiff must prove that the features taken as a whole are not "essential to the use or purpose of the article or . . . [do not affect] the cost or quality of the article," even if individual features possess functional characteristics. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n. 10 (1982); *Ashley Furniture Indus., Inc.*, 187 F.3d at 375.

To establish consumer confusion, courts consider the factors such as "(1) strength or distinctiveness of mark, (2) similarity of two marks, (3) similarity of goods or services marks identify, (4) similarity of facilities two parties use in their business, (5) similarity of advertising

used by two parties, (6) alleged infringer's intent, and (7) actual confusion." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F. Supp. 2d 680, 689 (E.D. Va. 2005), *aff'd*, 227 F. App'x 239 (4th Cir. 2007).

**D.    Unfair and Deceptive Trade Practices and Tortious Interference with Prospective Economic Expectancy**

Britax asserts both its unfair trade practices and tortious interference claims under North Carolina law.  A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state to determine the applicable substantive law.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In determining which jurisdiction's law to apply for claims based on issues of state law, Virginia's choice of law rules dictate that the laws of "the place where the alleged wrongful act occurred" be applied.  To adjudicate tort claims, federal courts in Virginia have interpreted "the place where the alleged wrongful act occurred" to mean the place where the last event to make an actor liable transpired.  The law of the place where prospective contracts with a third party were never consummated will be applied to tortious interference with prospective economic expectancy claims.  *See Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 12-2244, 2013 WL 3722347, 5 (4th Cir. July 17, 2013) (applying North Carolina law, the state where a customer terminated its contract with the plaintiff due to the defendant's tortious conduct); *Ford Motor Co. v. Nat'l Indem. Co.*, 2013 WL 4773977 (E.D. Va. Sept. 5, 2013) ("For a claim of tortious interference, the last event necessary is a legal injury or damage to the plaintiff caused by the wrongful interference.").  The law of the place where injuries were suffered will be applied to an unfair and deceptive trade practices claim.  *See Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 713-14 (E.D. Va. 2009) (concluding that "the place of the injury is each plaintiff's state of residence for the purposes of claims of unfair and deceptive trade practices" because plaintiffs suffered financial injury when they purchased overvalued

8

lands from their residences, although the actual lands were located in different states); *Corinthian Mortgage Corp. v. Choicepoint Precision Mktg., LLC*, 543 F. Supp. 2d 497, 503 (E.D. Va. 2008) (noting that "unfair trade practices claim is a tort claim" and is governed by the substantive law of the place where the injuries were suffered).

There is both a statutory and common law cause of action for unfair and deceptive trade practices under North Carolina law. "To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Strickland v. Lawrence*, 176 N.C. App. 656, 665 (2006) (citations and quotations omitted); *see also* N.C. GEN. STAT. ANN. § 75-1.1 (West 2012) ("[U]nfair or deceptive acts or practices in or affecting commerce, are declared unlawful."). "Under [N.C. Gen. Stat. §] 75-1.1, an act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." *Ace Chem. Corp. v. DSI Trans., Inc.*, 115 N.C. App. 237, 247 (1994) (internal citations omitted). "Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive practice." *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748 (2004).

There is a North Carolina common law cause of action for tortious interference with prospective economic expectancy that requires "conduct by the defendants which prevents the plaintiffs from entering into a contract with a third party." *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680 (1992). The plaintiff has the burden of establishing that the defendant "induced a third party to refrain from entering into a contract with Plaintiff without justification. Additionally, Plaintiff must show that the contract would have ensued but for Defendants'

interference." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585 (2002). A plaintiff may act with justification when there is "a reasonable and bona fide attempt to protect" the interests of the actor or when he or she acts with no legal malice. *United Lab. v. Kuykendall*, 322 N.C. 643, 662 (1988), *aff'd*, 335 N.C. 183, 437 S.E.2d 374 (1993). *See also Childress v. Abeles*, 240 N.C. 667, 675 (1954) (noting that legal malice may mean acting on "hatred, ill will, or spite."); *Coleman v. Whisnant*, 225 N.C. 494, 506 (1945) (holding that legal malice may occur when a party interferes "with the free exercise of another's trade or occupation . . . by preventing people, by force, threats or intimidation from trading with" the other party).

Summary judgment is appropriate for both unfair trade practices and tortious interference claims if the moving party shows that the evidence does not present a genuine issue as to any material facts, even when all inferences of fact are drawn in favor of the party opposing the motion. *MLC Auto., LLC v. Town of S. Pines*, 207 N.C. App. 555, 560 (2010); *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 251-52 (1998).

### III. DISCUSSION

The parties have filed two motions: Baby Jogger's Motion for Summary Judgment and Britax's Motion for Partial Summary Judgment. Baby Jogger moves for summary judgment that (1) Britax infringed its '548 Patent; (2) Claims 39, 40 and 53 of the '548 Patent are valid as a matter of law; (3) Baby Jogger has not infringed the '431 Patent; and (4) Baby Jogger and Zehfuss have not unfairly or deceptively competed with Britax or tortiously interfered with its prospective business. Britax moves for summary judgment that (1) the City Mini strollers' trade dress has not been infringed and (2) every claim of the '548 Patent is invalid.

10

*Baby Jogger's Motion for Summary Judgment*

**A.      Infringement of Baby Jogger's '548 Patent**

Baby Jogger argues that Britax's B-Agile and BOB Motion strollers practice every limitation of Claims 39-41, 53-54, 58, 65 and 72-73 of its '548 Patent and therefore infringe. Britax stipulates that its strollers are covered by the aforementioned claims but maintains that its strollers do not infringe because the '548 Patent is invalid as anticipated and obvious in light the relevant prior art, the '178 Patent. Based on this Court's analysis of anticipation and obviousness of the '548 Patent herein, Britax has not presented clear and convincing evidence that the '548 Patent is invalid for anticipation or obviousness. Britax has raised no other defense. Accordingly, the Court grants Baby Jogger summary judgment that Britax has infringed its '548 Patent.

**B.      Validity of Baby Jogger's '548 Patent**

**i.      Anticipation**

The parties do not dispute material facts related to the issue of anticipation. Baby Jogger maintains that Britax has not proven that the '178 Patent discloses each and every limitation of the '548 Patent to establish anticipation because Britax Expert Dr. James Rice ("Dr. Rice") provided only conclusory opinions of the disclosure of Claim 39 of the '548 Patent. First, Baby Jogger asserts that Dr. Rice does not sufficiently explain how the Claim 39 element that describes the '548 Patent stroller handle could have been disclosed. Baby Jogger's stroller handle is directly attached to a gear unlike the Al-Shiekh stroller handle, which is attached to a gear indirectly via a pivot pin, is rotatably mounted on the gear, and can move independently of the gear. Dr. Rice counters that regardless of the differences in the way the handle is connected to the gear, under the plain meaning of the word "attached," in both patents, the components are

11

nonetheless "attached" to one another; thus, attachment via a pivot pin permitting independent movement can nevertheless anticipate a claim describing direct and dependent attachment. Second, Baby Jogger argues that Dr. Rice does not establish anticipation of the Claim 39 description of the driving force engagement and corresponding rotation of the second leg member during the entire folding and unfolding process. Dr. Rice states that driving engagement occurs in the same way in the '178 Patent as in the '548 Patent when folding commences from the second unfolded position. Finally, Baby Jogger asserts that because Claims 40 and 53 depend on Claim 39 and anticipation of Claim 39 has not been established, Britax fails to establish anticipation for all three claims.

The Court finds that Britax has not provided sufficient evidence that all limitations of Claim 39 of the '548 Patent are disclosed by the '178 Patent. Britax fails to explain how the patents' folding processes perform the same functions and results despite the fact that the handles, force and motion are dissimilar. The evidence supports a finding that the '548 Patent discloses a different manner of attaching gears by subtracting the pivot pin from its structure and forcing simultaneous and dependent motion. The '548 Patent also changed the purpose of inventing a collapsible stroller. Baby Jogger endeavored to construct an easily foldable stroller for all-terrain use as opposed to a foldable stroller with a reversible handle. Britax has not demonstrated that the '178 Patent provides an inherent description of the '548 Patent that would have enabled one of ordinary skill in the art to create Baby Jogger's invention without undue experimentation because it has not sufficiently explained how the gear attachment and folding mechanism elements of Claim 39 are arranged in the same manner with the same application and results in the Baby Jogger stroller as in the Al-Shiekh stroller. The Court concludes that Britax has not presented clear and convincing evidence of anticipation of Claims 39, 40 and 53 of the

'548 Patent to establish invalidity; thus, summary judgment is granted for Baby Jogger on the issue of anticipation.

### B.    Obviousness

The parties do not dispute facts related to the scope of the prior art, the differences between the patents and the level of ordinary skill in the pertinent field under the *Graham* analytical framework.  The parties also have not explicitly identified secondary considerations for the Court to consider in its *Graham* analysis.  The parties disagree over whether the '548 Patent Claim 39 represents predictable modifications to the '178 Patent that one of ordinary skill in the art would have been motivated to make.  Baby Jogger argues that its stroller is more than an obvious improvement to the existing Al-Shiekh stroller.  Dr. Rice contends that the basic structure of the Baby Jogger and Al-Sheikh strollers' folding mechanism is the same regardless of the reversible handle and lost motion means.  He believes that the reversible handle and lost motion means are independent from the geared folding mechanism, meaning that the presence of these additional features does not preclude a finding that the folding mechanism of both patents performs the same way.  Dr. Rice also states that the '178 Patent's reversible handle would have been obvious to a person of ordinary skill to remove to simplify the stroller design and end up with a stroller like Baby Jogger's invention.  Baby Jogger counters that simplifying the design is not a genuine motivation to establish obviousness here because if making the handle stationary and eliminating the lost motion means was a "problem" that one of ordinary skill would have been motivated to invent around, it would not have taken fifteen years to develop a solution.

The Court finds that Britax has not provided clear and convincing evidence that the Al-Shiekh stroller renders Baby Jogger's invention obvious.  Britax has not demonstrated that Baby Jogger's stroller did not contribute more than would have been obvious to one of ordinary skill in

13

the art to the Al-Shiekh stroller.  The evidence does not demonstrate that more likely than not,

Baby Jogger simply combined familiar elements according to known methods to invent its

stroller.  Baby Jogger invented a baby stroller folding mechanism to allow for a simpler gear

structure, stationary handle and driving force and corresponding rotation of leg members during

the entire folding process.  Britax does not sufficiently explain how a motivation to eliminate a

specialized handle or simplify a design relates specifically to the '178 Patent because of any

problem with the original invention.  Britax also has not provided independent evidence of

secondary considerations to demonstrate the '548 Patent's obviousness such as lack of

advantages claimed over the prior art, expected results, lack of skepticism of experts in the field,

copying by competitors, and lack of commercial success.  Because Britax has not provided clear

and convincing evidence that Baby Jogger altered the '178 Patent in merely predictable ways,

the Court grants granting summary judgment in favor of Baby Jogger that Claim 39, and

consequently Claims 40 and 53, are nonobvious.

### C.    Infringement of Britax's '431 Patent

#### i.    Literal Infringement

Baby Jogger asserts that it is entitled to summary judgment that the '548 Patent does not

literally infringe Britax's '431 Patent.  First, Baby Jogger points out that this Court concluded

that the '431 Patent discloses knife blade followers, which the '548 Patent does not contain.

Britax argues that under the parties' agreed upon definition of a follower as "a component which

follows the motion of a separate component," the lower notched portion of each rotating gear

plate of the '548 Patent may be considered a follower even though it is not a separate component.

Britax insists that because the lower notched portion performs a different function and

corresponds to a different structure than the rest of the gear plate, it is a follower under the

14

parties' definition.  Second, Baby Jogger argues that its stroller does not literally infringe the "two meshing geared components" limitation of Britax's '431 Patent under the plain and ordinary meaning of the term.  Baby Jogger's '548 Patent has three geared components, two geared plates and an idler gear, and the geared plates do not directly mesh.  Britax argues that the two geared plates mesh indirectly via the third gear and may be considered two meshing gears.

Knife blade followers are not literally the same as lower notched portions of gear plates, especially since the knife blade followers are separate components while the notched portions are integrally connected to the gear plate.  Also, under the plain and ordinary meaning of the word "mesh," the "two meshing gears" term refers to gears that lock together or engage with one another.  To mesh directly with another gear is not literally the same as meshing indirectly with a gear using a third intermediary gear.  The Court concludes that Baby Jogger has not literally infringed Britax's '431 Patent and grants Baby Jogger summary judgment.

### ii.    Infringement under the Doctrine of Equivalents

Baby Jogger believes its strollers do not infringe the '431 Patent under the doctrine of equivalents.  Baby Joggers asserts that the differences between its three geared component structure and the '431 Patent's "two meshing geared components" are substantial.  Britax argues that there are no substantial differences in the gear structures or folding mechanisms of the '431 and '548 Patents because their configurations similarly function in a similar manner with a similar result.

A reasonable jury could find that the three geared components and lower notched portion of the gear plates in the '548 Patent perform substantially the same function in the same way with the same result as the two meshing gears and knife blade followers of the '431 Patent. There are disputed material facts regarding the '548 Patent that persist, including the

15

functionality of the lower notched portions of its geared plates and the meshing of its gears.

Concluding that there is equivalence between Baby Jogger's three gear structure and Britax's

two gear structure would not vitiate the "two meshing geared components" claim of the '431

Patent. A reasonable jury could find equivalence regardless of the dissimilar number of gears so

long as the gear structures substantially perform the same function in the same way with the

same result. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (noting

that "'[v]itiation' is not an exception to the doctrine of equivalents, but instead a legal

determination that 'the evidence is such that no reasonable jury could determine two elements to

be equivalent.'"). Because there is a genuine issue of material fact here, summary judgment is

denied on the issue of infringement of the '431 Patent under the doctrine of equivalents.

### D.      Unfair and Deceptive Trade Practices and Tortious Interference with Prospective Economic Expectancy by Baby Jogger and Mr. Zehfuss

Baby Jogger argues that Britax does not have admissible evidence to support either its

unfair and deceptive trade practices claim or tortious interference with prospective business

expectancy claim. Britax maintains that there are facts on record from depositions and exhibits

that, taken in the light most favorable to its company, demonstrate material disputed issues

regarding Baby Jogger's conduct, motive, intent and justifications. Baby Jogger also challenges

the certainty of Britax's requested damages. Britax maintains that it can establish that Baby

Jogger and Zehfuss's tortious, unfair and deceptive conduct was the proximate cause of

considerable lost profits. Lastly, Baby Jogger maintains that Britax incorrectly asserted its

causes of action under North Carolina law.

The Court finds summary judgment inappropriate because there are genuine factual

disputes remaining regarding Baby Jogger's allegedly tortious and unfair conduct. There are

genuine disputes of material fact that relate to the unfair and deceptive trade practices claim.

Neither party disputes whether the alleged torts affect commerce, but both parties proffer contradictory facts about Baby Jogger's allegedly unfair or deceptive acts and Britax's alleged damages, allegations necessary to establish a prima facie claim here. However, there is evidence that infers Baby Jogger may have engaged in unfair and deceptive acts. Zehfuss admitted during his deposition that he insinuated to manufacturer Sunnylove that the B-Agile strollers they were developing infringed Baby Jogger's patent and he confronted Britax employees in public about the B-Agile stroller's inferior and infringing qualities. Additionally, there is deposition testimony and documentary evidence that Zehfuss spoke with Buy Buy Baby representatives regarding the possibility of litigation against Britax.

Britax alleges that Baby Jogger was the proximate cause of Britax's damages. Britax presents evidence that because of Zehfuss and Baby Jogger's conduct, Sunnylove temporarily halted the manufacturing of its B-Agile stroller and Buy Buy Baby only sold the B-Agile stroller in six of its sixty-six stores at the time the product was launched. Even though Baby Jogger challenges the facts regarding Zehfuss's litigation threats and infringement accusations as well as the admissibility of the expert opinion to establish the $1.1 million loss profits damages figure, the Court finds that the evidence viewed in the light most favorable to Britax establishes that there is a genuine issue of material fact as to Baby Jogger's unfair and deceptive trade practices that must be presented to a jury.

There are also genuine disputes of material facts that relate to the tortious interference with prospective economic expectancy claim. The parties dispute whether Baby Jogger's conduct prevented Britax from entering into a contract with a third party. With inferences drawn in favor of Britax as the nonmoving party, there is evidence that demonstrates that Baby Jogger induced Buy Buy Baby to refrain from contracting to sell the B-Agile stroller in all of its stores.

There is also evidence to suggest the retail contract for the B-Agile stroller in all Buy Buy Baby stores would have ensued but for Baby Jogger's interference. Britax presents testimonial and documentary evidence of Buy Buy Baby's conversations with Baby Jogger about potential infringement and the possibility of a law suit before it decided not to retail the B-Agile strollers in more than six of its stores, even though other Britax products had been previously launched in all of its stores. The Court finds genuine issues of material fact regarding tortious interference with Britax's expected B-Agile stroller product launch. Summary judgment for Baby Jogger is denied.

The choice of law rules in this forum, the Commonwealth of Virginia, dictate that the substantive laws of the location of the last act necessary to make the defendant liable for the tort be applied. For the unfair and deceptive trade practices claim, it is the place where Britax suffered its financial injuries as a result of Baby Jogger's misconduct. For the tortious interference claim, it is the place where prospective contracts with a third party were never consummated as a result of Baby Jogger's interference. Since Britax's principal place of business is North Carolina, Britax experienced decreased shipments to and from its North Carolina distribution center and Buy Buy Baby refrained from submitting purchase orders for its North Carolina stores, Britax's assertion of its claims under North Carolina law is appropriate.

### *Britax's Motion for Partial Summary Judgment*

A.    **Trade Dress**

Britax moves for summary judgment that it has not infringed the City Mini strollers' trade dress because the strollers' product features are not protectable under the Lanham Act. Britax maintains that the design features of the City Mini stroller are functional and have not acquired secondary meaning based on survey evidence and deposition testimony. Baby Jogger

18

believes that it is entitled to a presumption of secondary meaning in its City Mini strollers' trade dress because Britax intentionally copied its product features. Even absent the presumption, Baby Jogger asserts contrary evidence to demonstrate that under the *Perini* factors, the configuration of the City Mini strollers' packaging and design features is inherently distinctive and nonfunctional.

In the absence of ample evidence of direct copying, the Court finds that Baby Jogger is not entitled to a presumption of secondary meaning. However, Baby Jogger has raised genuine issues of material fact regarding its trade dress' secondary meaning and functionality, which must be resolved by a fact finder. Baby Jogger presents evidence that the City Mini stroller canopy and foot bed are not functional, particularly since they require increased manufacturing costs. Baby Jogger challenges Britax's survey of consumers' recognition of the City Mini stroller trade dress as erroneous and unreliable. With inferences drawn in favor of Baby Jogger as the nonmoving party, Britax has not proven that there are no genuine issues of material fact. Because a reasonable jury could conclude that the City Mini strollers' product features are protectable and its trade dress has been infringed, Britax's Motion for Partial Summary Judgment is denied.

## B.      Validity of Baby Jogger's '548 Patent

Britax seeks summary judgment that the '548 Patent is invalid for anticipation and obviousness. Britax challenges the validity of the '548 Patent in two ways. First, Britax attacks Baby Jogger's Motion for Summary Judgment directly by arguing in opposite that Claims 39, 40 and 53 are anticipated and obvious in light of the '178 Patent. Second, Britax argues Claims 41, 54, 58, 65, 72-73 of the '548 Patent are rendered anticipated and obvious by the '178 Patent.

First, as explained in the aforementioned analysis, Britax asserts that each limitation of Claims 39, 40 and 53 of the '548 Patent is disclosed by the '178 Patent. Britax argues that the basic structure of the Baby Jogger and Al-Sheikh strollers' folding mechanisms is the same. It also claims that both patents similarly describe attached gears and driving engagement. Baby Jogger maintains that Britax has not proven by clear and convincing evidence that the '178 Patent discloses, teaches or motivates each limitation of Claim 39 of the '548 Patent to establish invalidity by anticipation or obviousness.

Britax provides evidence of similarities between the '178 and '548 Patents' folding mechanisms. However, Britax has not proven that it is substantially more likely than not that one skilled in the art would be enabled to create the '548 Patent by incorporating the previous disclosures of the '178 Patent or by employing predictable modifications to the '178 Patent. Britax's invalidity arguments do not amount to clear and convincing evidence of the '178 Patent's disclosure of every element of Claim 39 of the '548 Patent or teaches each limitation of the Claim to overcome its presumption of validity; thus summary judgment is denied.

Second, Britax also moves for summary judgment that Claims 41, 54, 58, 65, 72-73 of the '548 Patent are anticipated and obvious in light of the prior art. Regarding anticipation, Britax asserts that Claims 58, 65 and 72 of the '548 Patent describe gears that permit leg members to rotate during folding just as the '178 Patent has a gear that permits the handle shaft to rotate during folding. But Baby Jogger believes that because of the '178 Patent handle's rotable mounting on a pivot pin and limited rotation of its leg members during folding, its claim limitations do not disclose the limitations of the '548 Patent. Also, Britax asserts that the handle described in Claims 41, 54, 58 and 73 of the '548 Patent as "fixedly attached" to the first gear is disclosed by a similar handle description in the '178 Patent because both patents feature a handle

20

and a gear that rotate in tandem. Baby Jogger counters that because there is a possibility of the '178 Patent handle rotating independently from the first gear, there is no anticipation. In addition, Claim 65 of the '548 Patent describes left and right side lock actuators that act to prevent relative rotation of the two gears, which Dr. Rice claims is disclosed by the '178 Patent's locking device on its front and rear legs that prevents rotation of the first gear sector relative to the second gear sector. Baby Jogger's expert Dr. Eric Maslen contends that Claim 65 describes a lock that acts directly on the gears unlike the lock in the '178 Patent.

Regarding obviousness, Britax generally reasserts the same arguments it made to establish anticipation. Britax makes an additional argument that Claim 65 of the '548 Patent is obvious in light of the '178 Patent and U.S. Patent No. 4,614,454 ("Kassai Patent"). The Kassai Patent describes a baby carriage that locks using two meshing gears on foldable sections of a grip rod. Britax reasons that it would have been obvious to one of ordinary skill in the field to replace the locking mechanism in the Al-Shiekh stroller with the locking mechanism from the Kassai Patent, resulting in a lock that would act directly on the gears like the lock in the '548 Patent. Baby Jogger does not believe that Britax has demonstrated that a person of ordinary skill would have been motivated to modify the '178 Patent to simplify its design, resolve a specific defect, remove an unnecessary feature or change the lock mechanism.

The Court finds, just as with Claims 39, 40 and 53, that Britax has not presented clear and convincing evidence that Claims 41, 54, 58, 65, 72-73 of the '548 Patent are anticipated or obvious. Britax has not explained how the '178 Patent discloses every limitation of the '548 Patent or how the '178 Patent would have motivated one of ordinary skill to invent what Baby Jogger patented. Anticipation has not been established. Britax fails to provide clear and

convincing evidence that the '548 Patent presents and arranges every '178 Patent claim element with no change in application or result.

And, obviousness has not been established. Britax does not sufficiently explain how the '548 Patent as a whole would have been obvious in light of the prior art, but makes only conclusory assertions of obviousness without referencing specific claims or comparing particular limitations, with the exception of Claim 65. However, even in its explanation of the obviousness of Claim 65, Britax does not clarify why one of ordinary skill would have replaced the Al-Shiekh lock mechanism with the Kassai lock mechanism to resolve a problem or satisfy an apparent motivation. Because Britax has not provided clear and convincing evidence that the '548 Patent is anticipated or obvious in light of the prior art, summary judgment is denied on the issue of invalidity of the '548 Patent.

## IV. CONCLUSION

For the foregoing reasons, Baby Jogger's Motion for Summary Judgment that Britax has infringed its '548 Patent is **GRANTED**. Baby Jogger's Motion for Summary Judgment that the '548 Patent is valid and was not anticipated or obvious is **GRANTED**. Baby Jogger's Motion for Summary Judgment that it has not literally infringed Britax's '431 Patent is **GRANTED**. Baby Jogger's Motion for Summary Judgment that it has not infringed Britax's '431 Patent under the doctrine of equivalents is **DENIED**. Baby Jogger's Motion for Summary Judgment that it has not committed unfair and deceptive trade practices or tortious interference with prospective economic expectancy is **DENIED**. Britax's Partial Motion for Summary Judgment that it has not infringed Baby Jogger's City Mini stroller trade dress is **DENIED**. Britax's Partial Motion for Summary Judgment that the '548 Patent is invalid for anticipation and

22

obviousness is **DENIED**.  The Clerk is **DIRECTED** to provide a copy of this Memorandum

Opinion and Order to counsel for the parties.

      **IT IS SO ORDERED.**

Norfolk, Virginia
November *19* , 2013

                                           Raymond A. Jackson
                                           **United States District Judge**